IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

MARK ALAN JORDAN,               )
                                )
        Plaintiff,               )     Case No. 1:13-00074
                                )     Chief Judge Haynes
v.                              )
                                )
LAWRENCE COUNTY MEDICAL         )
PROVIDER, ONE STOP MEDICAL      )
PROVIDER, et al.,               )
                                )
        Defendants.             )

**MEMORANDUM**

Plaintiff, Mark Alan Jordan, filed this pro se action under 42 U.S.C. § 1983 against the Defendants: Lawrence County Detention Center, the Lawrence County medical staff and the Lawrence County medical provider that is the Defendant One Stop Medical, LLC ("One Stop"). Plaintiff's claims are for the Defendants' denial of medical care. In earlier proceedings, the Court dismissed the Lawrence County Detention Center and the Lawrence County medical staff. (Docket Entry Nos. 11 and 12, Order and Memorandum). Before the Court is One Stop Medical's motion for summary judgment (Docket Entry No. 27) to which Plaintiff has not responded.

The undisputed facts[1] are that One Stop operates a medical clinic to provides medical care and services, including for inmates of the Lawrence County Tennessee Correctional Facility. One Stop's services at the jail include office visits, ultrasounds, x-rays and laboratory tests. Brand Brown is One Stop's physician's assistant for the Lawrence County Detention Center and visits that facility

---

[1] See Docket Entry No. 30, Defendant's Undisputed Statement of Material Facts and Docket Entry No. 31, Brown Affidavit.

1

once per week or as needed. Jail nurses see the inmates daily based upon an inmate's medical pass or request for medical services. The jail nursing staff triages the inmate's medical condition for Brown who examines the jail nurses' reports and the inmate to approve or to alter a recommended treatment plan. Id. The jail nursing staff prepares a list of inmates for Brown to examine at the jail.

On December 28, 2012, Plaintiff completed a medical request complaining of blood in his stool for a few weeks. Brown did not sign or see this medical request. On January 14, 2013, the jail nurse listed Plaintiff to be examined at the One Stop clinic in Pulaski, Tennessee. Brown examined Plaintiff at her Pulaski office and conducted an abdominal and rectal examination, ordered blood work, and a hemoccult. Brown took Jordan off all nonsteroidal anti-inflammatory drugs that day. On January 16, 2013 Brown received Plaintiff's laboratory results revealing his elevated liver enzymes that required an abdominal ultrasound. Brown noted a possible referral for a gastro intestinal ("GI") series of tests. Although Jordan denied having hepatitis, Brown ordered a hepatitis panel and scheduled Plaintiff for an ultrasound at One Stop Medical on March 14, 2013, but Plaintiff refused the treatment. Plaintiff signed a form confirming his refusal of that medical service.

On May 9, 2013, Brown went to the Lawrence County jail and Plaintiff was on the list of inmates to be seen. Brown asked Plaintiff about his complaints and Plaintiff cited pain in his right elbow. Brown examined Plaintiff's elbow and administered a joint injection. During this examination, Plaintiff did not mention any other medical complaints. After Brown exited the examination room and upon Plaintiff's exit, Plaintiff complained of a hernia. Brown replied that she would examine him on another day. Brown does not recall this conversation. On June 5, 2013 Plaintiff completed a medical request for his hernia that he cited as occurring while he was on work release in February, 2013. Brown was not provided Plaintiff's June 5, 2013 medical request.

On July 19, 2013 Plaintiff submitted another medical request for a doctor's examination for his malnutrition and vitamin deficiency. On August 2, 2013 Brown ordered blood work to include nutritional status and vitamins. On this medical request form, Jennifer Elam, a jail nurse wrote that Plaintiff also reported a hernia, but without any mention of pain, nausea, or vomiting.. Brown arranged for another ultrasound and gastrointestinal referral for Plaintiff's hernia. On August 22, 2013, Plaintiff had an abdominal ultrasound provided by Dr. Mallipeddi, a gastroenterologist with a follow up visit by Dr. Mallipeddi on October 22, 2013. Dr. Mallipeddi's diagnosis was hernia, unspecified, gallstones, and chronic hepatitis. Dr. Mallipeddi ordered more blood work.

On October 2, 2013, Dr. Boyd, a general surgeon, was requested to examine Plaintiff for hernia, but Dr. Boyd refused. Plaintiff was then referred to Dr. Chavarria, a surgeon in Columbia, Tennessee and on October 25, 2013, Dr. Chavarria also diagnosed Plaintiff with a right inguinal hernia, recurrent. Id. On November 6, 2013, Plaintiff had surgery to repair his hernia.

## B. Conclusions of Law

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 advisory committee notes. Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

3

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electrical Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57 (6th Cir. 1989). But <u>see</u> <u>Routman</u>, 873 F.2d at 971.

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in <u>Celotex</u>:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

4

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of `demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then `must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must `present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

> The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine `whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material

5

factual dispute is genuine, applying the governing law.

> More important for present purposes, <u>summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party</u>.
>
> . . .
>
> Progressing to the specific issue in this case, we are convinced that <u>the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits</u>. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, <u>the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented</u>. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. <u>The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."</u>

<u>Liberty Lobby</u>, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

<u>Bohn Aluminum & Brass Corp. v. Storm King Corp.</u>, 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." <u>Duchon v. Cajon Co.</u>, 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a

summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshaling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshaling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for

summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6. As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

8

Under the Eighth Amendment, prisoners have a right to medical care. The standard for deciding whether this right has been violated was stated as follows:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (citation and footnotes omitted). Essentially, the same standard applies to pretrial detainees or other prisoners injured by the police. City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244-46, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983).

In Estelle, the prisoner had been examined on seventeen (17) occasions and the Supreme Court found that a failure to take an x-ray and to perform other diagnostic tests represented a claim for negligence. The Supreme Court made it clear that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid Eighth Amendment claim.

> This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain. . . .
>
> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

429 U.S. at 105-06 (footnote omitted). In this Circuit, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Yet, "medical attention rendered may be so woefully inadequate as to amount to no treatment at all." Id.

As it were with other Eighth Amendment claims, this claim likewise has objective and subjective components. Helling v. McKinney, 509 U.S. 25 (1993). The objective component requires a serious medical condition. Actual physical injury due to indifference is unnecessary. "That the Eighth Amendment protects against future harm to inmates is not a novel proposition." Helling, 509 U.S. at 33. Unnecessary suffering is sufficient for Eighth Amendment purposes. Boretti v. Wiscomb, 930 F.2d 1150 (6th Cir. 1991) (citing Estelle, 429 U.S. at 103). The prisoner's medical condition be not only serious, but obvious to correctional officers and requiring immediate medical attention. Inmates, Washington County Jail v. England, 516 F. Supp. 132, 139 (E.D. Tenn. 1980), aff'd without op., 659 F.2d 1081 (6th Cir. 1981). Moreover, "[a] `serious' medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Laaman v. Helgemoe, 437 F. Supp. 269, 311 (D. N.H. 1977) (citations omitted). Here, the medical testing reflects that Plaintiff had serious medical conditions.

The subjective element of the deliberate indifference standard, focuses on "the prison authorities' current attitudes and conduct." Helling, 509 U.S. at 36. In Estelle, the Supreme Court noted as an example of deliberate indifference, the "refusal of paramedic to provide treatment." 429 U.S. at 104 n.10. In Weeks v. Chaboudy, 984 F.2d 185, 187 (6th Cir. 1993), the Sixth Circuit noted

that "a determination of deliberate indifference does not require proof of intent to harm or a detailed inquiry into his state of mind" as to the facts giving rise to the doctor's deliberate indifference. Moreover, conscious indifference is not required. Molton v. City of Cleveland, 839 F.2d 240, 243 (6th Cir. 1988). Yet, "[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." Horn v. Madison County Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994). Proof of repeated acts of negligence do not establish deliberate indifference in this Circuit. The mere fact of delay alone is not actionable in several cases. Bellah v. McGinnis, 42 F.3d 1388, 1994 WL 664926 (6th Cir. 1994).

Here, given Brown's multiple examinations and testing of Plaintiff, including referrals to specialists, this Court concludes that the undisputed facts do not support any inference of deliberate indifference. Thus, the Court concludes that the Defendant One Stop's motion for summary judgment should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the 18th day of June, 2014.

WILLIAM J. HAYNES, JR.
Chief United States District Judge